# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHERRI CLOUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-16-1112-M |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Sherri Cloud (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). Doc. 1. United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 6.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C. Relevant findings.**

**1. Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant time period. AR 22-40; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired by degenerative disc disease of the back, seizure disorder, left and right knee mensical tears, posttraumatic stress disorder, panic disorder, anxiety disorder, depressive disorder, adjustment disorder, and cognitive disorder;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC), physically, to meet the exertional demands of sedentary work, except can lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently, can stand and walk for two out of eight hours, can sit for six out of eight hours, cannot climb ladders, ropes, or scaffolds, cannot balance, kneel, crouch, or crawl, can occasionally climb stairs and ramps and stoop, cannot work with unprotected heights or hazardous machinery and cannot drive commercially, is limited to simple tasks with routine supervision, cannot have public contact or engage in customer service, and is able to interact with supervisors and co-workers on a superficial basis and can adapt to work situations;

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

(4) has no past relevant work;

(5) was able to perform various jobs existing in the national economy; and so,

(6) had not been under a disability, as defined in the Social Security Act, since April 15, 2008—the date Plaintiff protectively filed her application for supplemental security income.

AR 22-40.

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the

evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff contends the ALJ erred (1) "when [s]he found a limited range of sedentary work"; (2) "by failing to include limitations in RFC for all of the severe impairments"; and (3) in "rely[ing] on only part of the expert testimony." Doc. 12, at 2-14 (bolding omitted and capitalization altered).

### C. Analysis.

#### 1. Alleged error in RFC assessment that Plaintiff could perform "a limited range of sedentary work." Doc. 12, at 2.

Plaintiff first contends "[t]he ALJ opinion never reflects that she considered [SSR 96-9p] when making her decision" that Plaintiff had a RFC for "less than a full range of sedentary work . . . ." *Id.* at 3; SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996). Such a conclusion "reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p, at *1; *see* Doc. 12, at 3. She alleges the ALJ failed to explain how Plaintiff could stand and walk given her "badly damaged, severe impairment knees" and that the ALJ "must have played doctor" rather than relying on "testimony and medical evidence in the record." Doc. 12, at 3.

The ALJ relied upon the state agency medical consultant's conclusion Plaintiff could perform sedentary work with postural limitations and environmental seizure precautions, and noted such limitations "adequately account[ed] for [her] complaints about her back and knees as well as her seizures." AR 34. In fact, the ALJ imposed greater restrictions than the state agency medical consultant recommended. *Id.* at 24; *see, e.g., id.* at 541, 542, 571. Plaintiff cites to no objective medical evidence supporting her argument. Substantial evidence supports the ALJ's RFC assessment.

**2. The RFC assessment's alleged insufficiencies.**

Next, Plaintiff alleges the ALJ's RFC assessment omitted limitations for "all of the severe impairments." Doc. 12, at 4. "[T]here is no provision in RFC for *actual* seizures occurring during the workday . . . ." *Id.*

**a. "Use of credibility to determine seizures and RFC."** *Id.* at 5.

Plaintiff first asserts the ALJ failed to properly evaluate credibility with respect to her seizure disorder. She challenges the ALJ determination that her testimony about the frequency and impact of her seizures was only partially credible. She maintains the ALJ cannot use credibility findings "to defeat an already determined severe impairment." *Id.*

An ALJ may make such a determination. *See* 20 C.F.R. §416.929(a) ("In determining whether you are disabled, we consider all of your symptoms,

include pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *see also* Social Security Ruling 16-3p, 2016 WL 1119029, at *6 (2016) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence.").

In reviewing an ALJ's credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of HHS*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). So long as she sets forth the specific evidence on which she relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001); *see Qualls v. Apfel*, 206 F.3d

7

1368, 1372 (10th Cir. 2000). In making a finding about credibility, the ALJ need not totally accept or totally reject the individual's statements. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." *See id.*

The Tenth Circuit has set forth the framework for analyzing evidence of subjective symptoms. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain). The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based upon all objective and subjective evidence. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). In the final step, the ALJ should consider the following factors: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Assuming plaintiff satisfied the first two *Thompson* factors, the ALJ had to consider plaintiff's assertions regarding subjective conditions and decide whether she believed them. *See Luna*, 834 F.2d at 163. The ALJ found Plaintiff's seizure disorder to be a severe impairment, but discounted Plaintiff's credibility. AR 22, 33, 34, 38. Plaintiff asserts that the ALJ found her not fully credible, but suggests she "is misstating the evidence," and that "credibility should not be used to determine seizure activity" because Plaintiff "does not know when they occur or the frequency." Doc. 12, at 5. But "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. The ALJ discounted both plaintiff's testimony and her reports that she suffered multiple monthly seizures, noting her inconsistent statements to her treating physicians and consultative examiner. AR 25, 27, 32, 33, 37; *see also id*. at 510, 644; *see Goodell v. Shalala*, 13 F.3d 405, No. 93-5105, at *1 (10th Cir. Dec. 2, 1993) (affirming the denial of benefits where the ALJ discounted plaintiff's "subjective complaints concerning the frequency and severity of his seizures").

The ALJ noted other discrepancies in the Plaintiff's statements. Though alleging disabling pain and limitations, she did not go to the Oklahoma City Indian Clinic from April 2012 through June 2013. AR 29. The ALJ noted Plaintiff "admits she sees no neurologist" despite her reports of multiple

9

monthly seizures. *Id.* Though suffering from allegedly disabling seizure disorder, treatment records show medication controlled the seizures. *Id.* at 30; 32-33. The ALJ found:

> the medical evidence leads to the conclusion that the claimant's allegations are not wholly credible. Radiologic imaging shows only mild to moderate findings, and clinicians note the claimant's normal gait and posture. [Plaintiff] exhibited some limited range of motion at times. She takes medication for her severe impairments, and her seizures occur infrequently, at times due to noncompliance. [Plaintiff]'s records indicate a few seizures a year at the most.

*Id.* at 34.

On more than one occasion, the ALJ noted, Plaintiff failed to comply with her treatment. *Id.* at 30 (Plaintiff "acknowledged noncompliance over the years since she was assessed with seizure disorder in 1990."); *see also id.* at 32-33, 722. The ALJ also noted Plaintiff denied any inpatient mental health hospitalizations, yet told a consultative psychologist otherwise. *Id.* at 31, 777.

The ALJ also observed that in 2011, after the denial of her claim, Plaintiff indicated a change in her personal hygiene, in that her son had to help her dress, bathe, care for her hair, shave, feed her and sometimes helps her go to the bathroom. *Compare id.* at 372, 373, *with id.* at 441, 444. Three months later, Plaintiff told a consultative psychologist she could "complete personal hygiene independently." *Id.* at 33, 777. And the ALJ observed Plaintiff gave

10

conflicting information regarding her smoking. *Id*. at 34, 996, 660, 511, 655, 895, 855, 759, 95, 128.

Further undermining her credibility as to her inability to work because of medical conditions, the record shows she left her job not for medical issues, but to care for her son who had suffered a stroke. *Id*. at 34, 149, 416. Coupled with a "very poor work history," indicative of a lack of motivation to work, the ALJ found this too served to discount Plaintiff's credibility. AR 34. And, the ALJ could properly consider Plaintiff's criminal record in assessing credibility. *See Watson v. Barnhart*, 194 F. App'x 526, 530-31 (10th Cir. 2006) (citing SSR 96-7p and *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) regarding the proper consideration of poor work history); *Duncan v. Colvin*, 608 F. App'x 566, 579 (10th Cir. 2015) ((affirming the ALJ's holding that a claimant's credibility was "eroded by a history of numerous violations of the law and subsequent incarcerations"). The ALJ adequately tied her credibility findings to substantial evidence in the record.

Plaintiff also contends the ALJ improperly rejected a Seizure Description form her son completed and a report her daughter completed. SSR 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like the claimant's son and daughter. See SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence should be evaluated by

11

considering the following factors: (i) nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. *Id.* at *6.

As the ALJ noted, Plaintiff's son reported he has witnessed three of his mother's seizures. AR 37, 369. He stated she jerks and thrashes, has fallen, injured herself, bitten her tongue, and soiled herself during a seizure. *Id.* The ALJ observed Plaintiff's daughter's report was similar to Plaintiff's May 2011 report, but included several daily activities that Plaintiff denied she was able to do. *Id.* at 37, 372-73.

The ALJ considered these reports, and gave them little weight "because of their high degree of subjectivity, and lack of medically acceptable standards." *Id.* at 37. "The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them in full." *Shelton v. Colvin*, 2015 WL 5569024, at *17 (W.D. Okla. Aug. 24, 2015) (unpublished report & recommendation), *adopted by*, 2015 WL 5579803 (Sept. 22, 2015) (unpublished order), *aff'd*, 663 F. App'x 690 (10th Cir. 2016). The ALJ's assessment of the lay witness opinions does not constitute reversible error.

      **b.**     **"The ALJ admits seizures occur."** Doc. 12, at 7.

As part of this challenge, Plaintiff relies on the ALJ's admission that Plaintiff suffered "a few seizures a year." *Id.* (citing AR 32). Because seizures occur, the ALJ's phase one of step four must account for them, but Plaintiff

12

contends the RFC assessment omitted "any limitations from her seizures . . . and in the inquiries to the VE at the hearing." *Id.* at 8; *see id.* at 7 ("[N]one of the actual seizure occurring limitations are in RFC, nor did the ALJ explain why she rejected these symptoms of the seizures she found were severe.").

Without citation to the record, and with citations to incorrect C.F.R. sections, she alleges fault in the ALJ's RFC assessment and argues the ALJ "must consider any medical opinions about what the claimant can still do as well as the claimant's testimony concerning her limitations, including limitations resulting from pain." *Id.* at 8-9. As shown above, the ALJ relied upon medical source opinions in making the RFC assessment. The ALJ determined Plaintiff has the severe impairment of a seizure disorder. AR 23. The ALJ concluded, because all of Plaintiff's brain scans were negative, "[s]he does not meet the requirements for a listed seizure disorder." *Id.* The ALJ included restrictions in the RFC assessment about environmental hazards and hazardous machinery to account for the seizure disorder. *Id.* at 24. The ALJ's question to the vocational expert included similar restrictions: "No unprotected heights, no hazardous machinery, no commercial driving." *Id.* at 102.

Plaintiff points to no medical record evidence opining Plaintiff has greater physical limitations than those the ALJ imposed. She identifies no particular functional limitation that would call into doubt the ALJ's RFC

13

assessment. *See* Doc. 12, at 4-6. Plaintiff cites no medical opinion that finds Plaintiff would be precluded from employment due to seizures occurring on the job or that her work activity would otherwise be limited due to seizures. *See also Hersch v. Barnhart*, 470 F. Supp. 2d 1281, 1286 (D. Utah 2006) (where medical diagnosis of seizures was based on claimant's subjective allegations and her doctor's speculation, ALJ properly considered other evidence "suggesting her seizures would not be a major impediment to performing certain tasks when determining the effect claimant's alleged seizures had on her ability to work").

And, the ALJ's RFC assessment is grounded in objective medical evidence—evidencing normal gait[2], normal motor strength in her extremities,[3] and normal sensation.[4] *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)); *Kirkpatrick v. Colvin*, 663 F. App'x

---

[2]  AR 512, 776, 836, 850, 852, 904, 907, 979.

[3]  AR 512, 658, 720, 760, 836, 850, 852, 904, 907, 979.

[4]  AR 512, 658, 720, 760, 836, 850, 852, 904, 907, 979.

646, 649 (10th Cir. 2016) (rejecting Plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations] . . . [a]nd it isn't our obligation to search the record and construct a party's arguments."); *Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (The court "will not comb through the record where counsel has not provided specific references tied to an argument.") (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)).

> **3.** **"It was error to rely on only part of the expert testimony."** Doc. 12, at 9.

In her final challenge, Plaintiff alleges the two of the three jobs the vocational expert identified (Laminator and Stuffer) would present hazardous machinery, *id.*, conflicting with the RFC assessment. And, she contends the third job (Final Assembler), risks her "fall[ing] face first on a screwdriver." *Id.* at 10.

The vocational expert testified that none of the three identified jobs would place Plaintiff near "any type of machinery" and that "there's nothing that would be harmful" if she suffered a seizure. AR 103-04. The vocational expert testified the Final Assembler job might involves have some very small hand tools, but the other two jobs involve no tools. *Id.* at 104. Plaintiff does not challenge the vocational expert's testimony as conflicting with the

15

*Dictionary of Occupational Titles* (DOT). The DOT indicates each job involves no mechanical moving parts, high exposed places, or other dangerous environmental conditions. *See* DOT, §§ 690.685-258 (Laminator I), 731.685-014 (Stuffer), 713.687-018 (Final Assembler, Optical Goods).

She also maintains the ALJ "cherry-picked" the vocational expert's testimony (in response to questioning by Plaintiff's counsel) that none of these jobs would allow unscheduled breaks. Doc. 12, at 10-14; AR 104-05. But the ALJ was not required to accept the vocational expert's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean*, 77 F.3d at 1214; *see Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (holding that vocational expert hypothetical is sufficient if "it contained all of the limitations found to exist by the ALJ"). Again, Plaintiff fails to demonstrate reversible error. *See also Johnson v. Colvin*, 640 F. App'x 770, 776 (10th Cir. 2016) ("The ALJ is required to include in a hypothetical inquiry to the vocational expert all and only those impairments the ALJ properly finds borne out by the evidentiary record.") (*citing Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

### III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by June 1, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 12th day of May, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE